1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEANNETTA MARTIN-SANFORD,

11          Plaintiff,                    No. CIV S-04-2554 PAN

12      vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15          Defendant.                    ORDER
     _____/
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court

20   will deny plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for

21   summary judgment, and order this matter remanded for further proceedings consistent with this

22   order.

23   /////

24   /////

25   /////

26   /////

I. Factual and Procedural Background

In a decision dated May 27, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of osteoarthritis and degenerative disc disease of the spine, but that these impairments alone or in combination do not meet or medically equal a listed impairment; the plaintiff's subjective allegations of pain are not credible; plaintiff has the residual functional capacity to perform light exertion with occasional climbing, balancing, stooping, kneeling, crouching and crawling and with avoidance of working in environments where there are extreme temperature changes;

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1   plaintiff is capable of performing a significant number of jobs that exist in the national economy;

2   and plaintiff is not disabled.  Administrative Transcript ("AT") 17-18.  Plaintiff contends that the

3   ALJ erred at step two of the sequential analysis by not recognizing all of plaintiff's severe

4   impairments and in his determination that plaintiff did not suffer an impairment or combination

5   of impairments that met or equaled a listing; the ALJ erred in his determination of plaintiff's

6   residual functional capacity; the ALJ relied upon an incomplete hypothetical to the vocational

7   expert (VE); and the ALJ improperly discredited the weight of plaintiff's treating physician and

8   plaintiff's subjective complaints of pain.[2]

9   II.  Standard of Review

10          The court reviews the Commissioner's decision to determine whether (1) it is

11  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

12  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

13  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

14  Substantial evidence means more than a mere scintilla of evidence, but less than a

15  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

16  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

18  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

19  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

20  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

21  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

22  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

23  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

24  substantial evidence supports the administrative findings, or if there is conflicting evidence

25

26          [2]The Government response addresses only the weighing of medical evidence, plaintiff's
    credibility, and the ALJ's consideration of plaintiff's combination of impairments.

3

1   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

2   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

3   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

4   1335, 1338 (9th Cir. 1988).

5   III.  Analysis

6        a.  The ALJ Committed Harmless Error at Step Two of the Sequential Analysis

7                Plaintiff contends the ALJ improperly assessed the severity of her impairments

8   and failed to consider all of them in combination.  An impairment is "not severe" only if it

9   "would have no more than a minimal effect on an individual's ability to work, even if the

10  individual's age, education, or work experience were specifically considered." SSR 85-28.  This

11  assessment is done at step two of the sequential analysis, and its purpose is to identify claimants

12  whose medical impairment is so slight that it is unlikely they would be disabled even if age,

13  education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct.

14  2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless

15  claims."  Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996);  see also Edlund v. Massanari,

16  253 F.3d 1152, 1158 (9th Cir. 2001).  Impairments must be considered in combination in

17  assessing severity.  20 C.F.R. § 404.1523.

18               The burden is on plaintiff at step two of the sequential evaluation. See Tidwell v.

19  Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff argues the ALJ failed to recognize as severe a

20  number of alleged impairments, including heart palpitations.  Furthermore, plaintiff contends that

21  the ALJ failed to consider the combination of plaintiff's condition; the recognized severe

22  impairments of osteoarthritis and degenerative disc disease as well as her alleged additional

23  impairments of heart palpitations and leg pain.  Plaintiff's memorandum at 7: 25-26.

24               The de minimis nature of plaintiff's burden is a recognition of the fact that step

25  two analysis exists to screen only the most baseless claims.  Plaintiff's complaint of heart trouble

26  does not fit into this category.  In this case, plaintiff presented objective medical evidence to

4

support her claims of heart trouble.  See Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005); Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)(upholding step two denial when there was no medically acceptable clinical evidence to support plaintiff's subjective complaints).  The initial treatment for plaintiff's heart problem required two days of hospitalization.  AT 105.  Her follow-up care required four days.  AT 117.  Following a diagnosis of cardiac arrhythmia, plaintiff's treating physician prescribed nitroglycerin, AT 105, which she continued to use upon her evaluation by the examining physician,  AT 138, and maintained through the hearing date.  Furthermore, plaintiff testified she often used nitroglycerin the few times each month that she exerted herself, AT 36, and experienced dizziness and numbness in her extremities, symptoms consistent with heart trouble.  Based upon this evidence, it is clear that plaintiff's cardiac arrhythmia was a severe impairment that should have been considered by the ALJ.

The ALJ provided no reason for concluding that plaintiff's cardiac arrhythmia was not severe.  However, the ALJ's heavy weighting of the medical opinion of the examining physician, as well as his apparent reliance on the exertional recommendations of the nonexamining physician imply that he was influenced by their lack of any explicit mention of any significant cardiac limitations.  Furthermore, the record reveals that plaintiff has not had any follow-up care for her heart problems since her final hospitalization in December 2002.  In fact, plaintiff appears to have skipped her follow-up appointment scheduled for one month following her discharge.  AT 152.  Finally, the ALJ expressly discounted the subjective complaints of plaintiff,  includingr testimony of heart trouble and their impact on her daily activities.  AT 16.

In spite of the low threshold of step two, it was improper for the ALJ to fail to consider plaintiff's cardiac arrhythmia as a severe impairment.  The record provides substantial evidence of the impact this condition has had upon plaintiff's health and her ability to work.  While not explicit in their findings, the doctors' opinions that plaintiff limited to light work is a recognition of her limitations, be they orthopedic or cardiac.  Furthermore, as explained more fully below, plaintiff's subjective complaints were improperly discounted by the ALJ.

5

1    With regards to plaintiff's complaint of leg pain, the ALJ did not commit error.

2 While plaintiff testimony regarding her pain, there is no objective evidence to support such a

3 diagnosis.  Moreover, plaintiff's contention that "chronic pain" should be considered a severe

4 impairment ignores the governing regulations.  Pain is a symptom, not an impairment.  See 20

5 C.F.R. § 404.1529 ("[S]ymptoms . . . will not be found to affect your ability to do basic work

6 activities unless medical signs or laboratory findings show that a medically determinable

7 impairment(s) is present."); SSR 95-5p; see also Smolen 80 F.3d at1281; In re Heckler, 751 F.2d

8 954, 955 n.1 (8th Cir. 1984) ("pain is a symptom, not an impairment").  It was not error for the

9 ALJ to dismiss plaintiff's leg pain at step two.

10    In spite of the error regarding plaintiff's arrhythmia, remand is not required.  As

11 explained below, failure to consider plaintiff's cardiac problems was harmless error.  See Curry

12 v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial

13 review of social security cases).  There is no basis upon which to disturb the ALJ's ruling.

14   b.  The ALJ Committed Harmless Error by Determining that Plaintiff's Impairments did

15 not Meet or Equally a Listed Impairment.

16    The Social Security Regulations "Listing of Impairments" is comprised of

17 impairments to fourteen categories of body systems that are severe enough to preclude a person

18 from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

19 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

20 irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

21 the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

22 1985).

23    The ALJ's determination that plaintiff's osteoarthritis and degenerative disc

24 disease did not meet a listed impairment was not in error.  These impairments are analyzed as

25 musculoskeletal impairments under Section 1 of the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

26 Given the objective medical evidence concerning plaintiff's conditions; including the numerous

1  radiological images; treating, examining, and nonexamining physicians' opinions; and the

2  testimony of plaintiff concerning her subjective complaints and her daily limitations, the ALJ's

3  determination that plaintiff did not meet or equal a listing was proper.

4          Furthermore, even considering plaintiff's cardiac arrhythmia, it is apparent that

5  plaintiff does not have an impairment or combination of impairments that meet or exceed a

6  listing.  Cardiac arrhythmia are evaluated as disorders of the cardiovascular system.  20 C.F.R.

7  Pt. 404, Subpt. P, App. 1, Section 4.  An examination of the listing reveals plaintiff's arrhythmia,

8  controlled by medication and limited in occurrence, are not severe enough to require the statutory

9  conclusion of disabled.  As a result, the medical evidence does not warrant a finding that plaintiff

10  is presumptively disabled because of her heart problems.

11          Plaintiff's heart trouble is only one of several impairments.  If a plaintiff has more

12  than one impairment, they must be considered in combination.  20 C.F.R. § 404.1526(a); Lester

13  v. Chater, 81 F.3d 821, 829 (9th Cir. 1995)("[symptoms] must be considered in combination and

14  must not be fragmentized in evaluating their effects").  The determination that a combination of

15  impairments equals a listing must be based upon medical evidence only.  20 C.F.R. §

16  404.1529(d)(3).  Even with a finding that plaintiff's cardiac arrhythmia was a severe impairment,

17  there is no combination of impairments supported by the medical evidence that equals a listing.

18          There is no medical evidence in the record supporting any theory that plaintiff's

19  heart troubles exacerbate her osteoarthritis and degenerative disc disease.  See Lewis v. Apfel,

20  236 F.3d 503, 514 (9th Cir. 2001).  While plaintiff testified that her weak heart caused her to feel

21  numbness and tingling in her extremities, AT 35, and caused a "pounding" that "gets painful,"

22  AT 36, there are no objective medical findings of any physician to support any link with her

23  osteoarthritis or disc degeneration.  Because the inclusion of plaintiff's heart disease into the step

24  two analysis does not change the result, the ALJ's error must be considered harmless.  See Curry,

25  925 F.2d at 1129.

26          c.  The ALJ Erred in his Determination of Plaintiff's Residual Functional Capacity.

7

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  In this case, the ALJ concluded that plaintiff retains the residual function capacity to "perform light exertion with occasional climbing, balancing, stooping, kneeling, crouching and crawling and with avoidance of working in environments where there are extreme temperature changes."  AT 18.  This conclusion is not supported by substantial evidence in the record.

The ALJ properly noted that multiple medical opinions determined that plaintiff retained some capacity for work.  AT 15.  Dr. Cassim opined that plaintiff was capable of performing many of the tasks associated with light work;[3] including carrying 20 pounds occasionally and 10 pounds frequently, walking or standing up to six hours in an eight hour workday with frequent breaks every hour, and without any restriction on sitting.  AT 142.  Dr. Cassim did restrict plaintiff from any bending, stooping, crouching, climbing, kneeling, balancing, crawling, or pulling because of her back pain and arthritis.  Id.  In addition, Dr. Cassim stated that plaintiff should avoid working in environments that experienced extremes of temperatures or heights.  Id.  The opinion of doctors with the State Agency differed only in that plaintiff was restricted to occasional climbing, stooping, kneeling, crouching, and crawling and there were no restrictions on balancing.  AT 145.

These opinions differed from that of Dr. Kumar, plaintiff's treating physician.[4]

---

[3]Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls."  20 C.F.R. 404.1567(b).

[4]The court notes that the record contains medical consults from Dr. Anil Kumar, who provided cardiology consults upon plaintiff's admission to the hospital in 2002.  All references in

1    According to Dr. Kumar, plaintiff could only carry 10 pounds frequently, and she could never

2    climb, kneel, crawl, or reach below her knees or above her shoulders.  AT 190.  In addition, Dr.

3    Kumar stated that plaintiff could only occasionally balance, stoop, or crouch, and could only

4    occasionally reach in the area between her knees and her shoulders.  Id.

5           It is important to note that no doctor opined that any of plaintiff's restrictions were

6    the result of her heart problems.  In fact, in making their determination, the State Agency doctors

7    expressly noted that plaintiff's heart palpitations were controlled by medication.  AT 153.  Dr.

8    Kumar's notes never indicated that plaintiff's heart is anything other than normal.  AT 154, 156-

9    64.  Furthermore, Dr. Kumar's letter dated July 22, 2004, addressed "To Whom It May

10   Concern," states that plaintiff is disabled, citing her hernia damage, osteoarthritis, spurring of the

11   joints in the hands, and depression, yet makes no mention of plaintiff's heart problems.  AT 194.

12          Despite the fact that the ALJ placed significant weight on the opinion of Dr.

13   Cassim, his ultimate conclusion regarding plaintiff's residual functional capacity exceeded Dr.

14   Cassim's recommendation in that it did not completely restrict plaintiff's postural abilities.  As a

15   result, the only opinion upon which the ALJ based his determination that plaintiff could

16   occasionally climb, balance, stoop, kneel, crouch, and crawl was offered by the nonexamining

17   physician at the State Agency.  In light of the dramatically contrary opinion of Dr. Kumar, the

18   treating physician, and given the ALJ's stated acceptance of the opinion of Dr. Cassim, the

19   examining physician, it cannot be said that the opinion of the nonexamining physician provides

20   the substantial evidence necessary to support a finding that plaintiff is capable of occasional

21   climbing, balancing, stooping, kneeling, crouching and crawling.  See Lester v. Chater, 81 F.3d

22   821, 831 (9th Cir. 1995)(holding that the opinion of a non-examining professional, without other

23   evidence, is insufficient to reject the opinion of a treating or examining professional).

24   /////

25   _____

26   the opinion will be to Dr. Kain Kumar, her treating physician, unless otherwise noted.

1    The ALJ's residual function determination appears to have been influenced by his

2    credibility assessment of the plaintiff.  Credibility determinations do factor into evaluations of

3    medical evidence.  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v.

4    Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  However, as noted below,

5    this credibility assessment was in error.  Therefore, any influence this credibility assessment of

6    plaintiff may have had on the ALJ's weighing of the multiple medical opinions is also flawed.

7    The record contains the opinion of two doctors who performed hands-on

8    assessments of plaintiff.  To the opinion of one of these doctors, the ALJ assigned significant

9    weight.  For the ALJ to disregard the medical opinions of these doctors in favor of a

10   nonexamining physician was error.  Without more, the nonexamining physician's opinion cannot

11   provide the substantial weight necessary to support the residual functional capacity

12   determination.  Remand is necessary in order for the ALJ to properly evaluate the residual

13   functional capacity in light of all of the properly weighed evidence in the record.

14       d.  The ALJ Improperly Relied Upon a Incomplete Hypothetical Offered to the

15   Vocational Expert.

16   Hypothetical questions posed to a vocational expert must set out all the

17   substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.

18   Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all of the claimant's

19   limitations, the expert's testimony as to jobs in the national economy the claimant can perform

20   has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

21   ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

22   of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

23   must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d

24   418, 422-23 (9th Cir. 1988).

25   The ALJ ultimately based his findings upon a hypothetical that concluded plaintiff

26   was limited to light exertion with occasional climbing, balancing, stooping, kneeling, crouching

1   and crawling and with avoidance of working in environments where there are extreme

2   temperature changes.  AT 17.  In response, the VE stated that a significant number of jobs

3   existed in the national economy for which plaintiff was qualified, including small product

4   assembly, packing, cafeteria attendant, and laborer.  AT 43-44.  In reliance upon this expert

5   opinion, the ALJ determined that plaintiff was not disabled.  AT 17.

6           The hypothetical upon which the ALJ relied did not fully capture all of plaintiff's

7   limitations.  Specifically, the hypothetical was based upon a residual functional capacity not

8   supported by substantial evidence in the record.  Consequently, the hypothetical did not provide

9   an accurate picture of the full range of jobs plaintiff is physically capable of performing.

10  Accordingly, reliance upon it by the ALJ was in error.  Remand is necessary in order to permit

11  the evaluation of any additional hypotheticals which may become necessary as the evidence is

12  evaluated and the record developed.

13      e.  The ALJ Improperly Weighed the Opinion of Plaintiff's Treating Physician.

14          The weight given to medical opinions depends in part on whether they are

15  proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

16  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

17  who has a greater opportunity to know and observe the patient as an individual.  Id.;  Smolen v.

18  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

19          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

20  considering its source, the court considers whether (1) contradictory opinions are in the record;

21  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

22  treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

23  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

24  rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

25  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

26  examining professional's opinion (supported by different independent clinical findings), the ALJ

11

1    may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

2    Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

3    weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172

4    F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

5    rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

6    without other evidence, is insufficient to reject the opinion of a treating or examining

7    professional.  Lester, 81 F.3d at 831.

8              As noted above, the opinion of the treating physician, Dr. Kumar, was that

9    plaintiff was significantly disabled, unable to lift any weight over 10 pounds, and incapable of

10   walking or standing for longer than five minutes.  AT 194.  This opinion was contradicted by the

11   opinion of Dr. Cassim, the examining physician, as well as the nonexamining physician from the

12   State Agency.  Both of these contradictory opinions determined that plaintiff was capable of

13   significantly more lifting and movement than Dr. Kumar.

14             In spite of these contrary opinions, it was error for the ALJ to discredit the

15   findings of Dr. Kumar.  The ALJ stated that Dr. Kumar's opinion was not supported by the

16   objective evidence in the record and merely repeated claims made by the plaintiff.  However,

17   radiologic studies of plaintiff's back show moderate neural stenosis, or narrowing of the space at

18   the center of the spine, a condition that can cause pain by putting pressure on the spinal cord and

19   nerves.  AT 151.  If Dr. Kumar repeated plaintiff's claims, it appears he did so because they were

20   supported by the objective medical evidence.

21             The ALJ stated that he also discredited the treating physician's opinion because

22   Dr. Kumar first saw plaintiff shortly before she filed her application for benefits.  AT 16.  The

23   fact that Dr. Kumar saw plaintiff just a few weeks prior to her filing is not a sufficient reason to

24   discredit his opinion.  Lester, 81 F.3d at 830 ("The purpose for which medical reports are

25   obtained does not provide a legitimate basis for rejecting them.")  Furthermore, any implication

26   that Dr. Kumar was simply a hired gun for the purposes of a favorable opinion is discredited by

1   his continued treatment of plaintiff.  Dr. Kumar saw plaintiff no fewer than 10 times after his

2   initial assessment, AT 155-64, and was concerned enough about her complaints to order two

3   MRIs, one on January 31, 2002, and an additional one on July 7, 2003.  AT 165, 167.

4          The reasons offered by the ALJ to discredit the opinion of the treating physician

5   are specific.  However, substantial evidence in the record does not support their legitimacy.  The

6   findings of the ALJ discrediting the opinion of plaintiff's treating physician cannot be upheld.

7   Remand is necessary in order for the ALJ to properly weigh the medical evidence.

8          f.  The ALJ Improperly Evaluated Plaintiff's Complaints of Pain.

9          The ALJ determines whether a disability applicant is credible, and the court defers

10   to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

11   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

12   an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

13   v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

14   supported by "a specific, cogent reason for the disbelief").

15          In evaluating whether subjective complaints are credible, the ALJ should first

16   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

17   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

18   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

19   medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

20   (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

21   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

22   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

23   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

24   55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

25   and effect of symptoms, and inconsistencies between testimony and conduct also may be

26   relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ discredited plaintiff's subjective complaints of pain for a number of reasons.  The ALJ noted that the plaintiff's complaint are not consistent with the objective testimony in the record.  In addition, the ALJ determined that plaintiff engaged in activities that were inconsistent with her claimed level of impairment.

The ALJ noted that plaintiff received conservative treatment and stated that she failed to pursue more aggressive treatment strategies to combat her pain.  AT 16.  In addition, plaintiff failed to engage in a course of physical therapy.  Id.  Furthermore, while she utilized a cane for assistance, it was not apparent that any doctor had in fact prescribed one for her.  Id.

However, as there is no evidence in the record of malingering, these reasons do not provide the clear and convincing evidence necessary to discredit plaintiff's subjective complaints.  The ALJ finds significance in the fact that plaintiff had not engaged in any home treatments to alleviate her pain.  Id.  However, uncontroverted testimony from the plaintiff described how she did in fact take baths.  AT 38.  Furthermore, plaintiff's initial pain questionnaire stated that she used ice and ointments to relieve her symptoms.  AT 92.

In addition, the ALJ noted that plaintiff's activities of living in an apartment with her son, taking care of personal needs, shopping, cooking, and doing household chores cast doubt upon her subjective complaints.  Plaintiff's ability to engage in some daily activities does not

14

1    compromise her subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594

2    (9thCCir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885

3    F.2d 597, 603 (9th Cir.1989) (holding that one need not be "utterly incapacitated" in order to be

4    disabled).  As plaintiff testified, her daily activities were limited by her pain, not precluded.

5            Plaintiff stated that her shopping was restricted to going to the grocery store no

6    more than twice a month and that she was forced to sit frequently and could not stand in line

7    without assistance.  AT 34.  The only other trips outside that plaintiff made were to her doctor's

8    office.  AT 36.  At home, plaintiff testified that her activities were limited to using the restroom

9    and bathing, as her son did all of the housekeeping.  AT 38.  Such limited activity, consistent

10   with attending to basic needs, does not cast serious doubt upon plaintiff's complaints.

11           Given the errors in the ALJ's justification, it cannot be said that clear and

12   convincing evidence exists with which to discredit plaintiff's complaints.  Several of the factors

13   considered by the ALJ were not supported by the evidence in the record.  The ALJ's credibility

14   determination cannot be upheld by this court and remand is necessary to properly evaluate

15   plaintiff's testimony.[5]

16        g.  The ALJ did not Consider Additional Evidence Provided After the Close of the

17   Administrative Hearing.

18           Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841,

19   849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to

20   develop the record even when claimant is represented).  Evidence raising an issue requiring the

21   ALJ to investigate further depends on the case.  Generally, there must be some objective

22   evidence suggesting a condition which could have a material impact on the disability decision.

23   See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of Health and

24

25   [5]Remand is generally not appropriate when the sole issue before the ALJ is plaintiff's
     credibility.  See Lester, 81 F.3d at 834; Varney v. Secretary of Health and Human Services, 859
     F.2d 1396, 1401 (9th Cir. 1988).  However, as this case presents multiple issue for
26   reconsideration by the ALJ, a finding in favor of plaintiff is not warranting.

1    Human Services, 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's

2    duty to 'conduct an appropriate inquiry.'"   Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

3    2001) (quoting Smolen, 80 F.3d at 1288.)

4             In this case, the ALJ closed the hearing a refused to consider additional evidence

5    proffered by plaintiff.  AT 47-48.  This evidence included an additional report from Dr. Kumar

6    and an MRI of plaintiff's hand.  AT 47.  The additional evidence from Dr. Kumar, which appears

7    to be a letter dated July 12, 2004, and addressed "To Whom It May Concern,"is contained in the

8    record of proceeding for this case.  AT 194.  The x-ray was not included in the record of

9    transcript and was included in plaintiff's appeal to this court.

10            A case may be remanded to the Secretary for the consideration of new evidence if

11   the evidence is material and good cause exists for the absence of the evidence from the prior

12   record.  Sanchez v. Secretary of HHS, 812 F.2d 509, 511-12 (9th Cir. 1987).  In order for new

13   evidence to be "material," the court must find that, had the Secretary considered this evidence,

14   the decision might have been different.  The court need only find a reasonable possibility that the

15   new evidence would have changed the outcome of the case.  Booz v. Secretary of Health and

16   Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

17            There is a reasonable probability that consideration of this evidence might have

18   changed the outcome; possibly affecting the residual functional capacity, credibility assessments,

19   or the hypothetical relied upon by the ALJ and the subsequent response from the VE.  The letter

20   from plaintiff's treating physician provides a strong opinion of plaintiff's limitations and their

21   impact on her life.  It documents numerous afflictions suffered by plaintiff and, given its source,

22   presents some evidence which might have changed the outcome of the case.

23            The additional radiologic images of plaintiff's hands provide objective evidence

24   of a possible disability.  Specifically, the impression from the MRI suggest "mild bilateral

25   degenerative spurring affecting the [distal interphalangeal] joints" of plaintiff's right and left

26   thumbs.  Plaintiff's memorandum at Appendix A.  This impression is consistent with plaintiff's

1    testimony at the hearing that she was having problems with her hands that made it difficult to

2    hold onto the everyday items.  AT 35.

3              Remand to the ALJ and consideration of this medical evidence is required.  The

4    weight given by the ALJ to plaintiff's treating physician's opinion, as well as credibility

5    assessment of plaintiff's testimony and his determination of plaintiff's residual functional

6    capacity, may be impacted by this additional evidence.  Furthermore, the additional medical

7    evidence is relevant in light of the fact that the ability to finger and grasp was cited by the VE as

8    a skill required for many of the jobs ultimately cited as available to plaintiff.  AT 44.

9              For the foregoing reasons, this matter will be remanded under sentence four of 42

10   U.S.C. § 405(g) for further development of the record and further findings addressing the

11   deficiencies noted above.

12             Accordingly, IT IS HEREBY ORDERED that:

13             1.  Plaintiff's motion for summary judgment is denied;

14             2.  The Commissioner's cross motion for summary judgment is denied; and

15             3.  This matter is remanded for further proceedings consistent with this order.

16   DATED: May 23, 2006.

17

18                              _____
                                UNITED STATES MAGISTRATE JUDGE
19

20   ggh13
     Martin-Sanford.ssi.wpd
21

22

23

24

25

26